UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
UNITED STATES OF AMERICA,

-against-

**OPINION AND ORDER**

18-CV-237-SJB

MOHAMADOE LAMINE MBACKE,

Defendant.
--------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On March 27, 2018, Mohamadoe Lamine Mbacke ("Mbacke") was being escorted by Immigration and Customs Enforcement ("ICE") officers at John F. Kennedy International Airport ("JFK"). Mbacke was being removed from the United States to Senegal, his native country, as a result of a 2015 order of an Immigration Judge. While waiting for his flight at JFK Terminal 4, Mbacke fled from the airport, and was arrested at a Starbucks in Chicago three days later.

Thereafter, the Government charged Mbacke with a misdemeanor violation of 18 U.S.C. § 751(a), the federal criminal escape statute. The Government's decision to charge Mbacke with a crime was understandable: Mbacke was captured on video running through and out of JFK, away from ICE officers, while he was to board a flight to Senegal. When he was found in Chicago, he provided a false identification belonging to someone else, and claimed he was from Ecuador. Mbacke is also subject to a lawfully entered removal order that he did not and does not now contest.

There is a federal statute that makes it a crime for someone to interfere with or hamper his removal from the United States. That crime is a felony. 8 U.S.C. § 1253(a)(1)(C) (making it a crime when alien "connives or conspires, or takes any other

action, designed to prevent or hamper or with the purpose of preventing or hampering . . . departure[.]"). The Government did not charge Mbacke under that law. Instead, it charged Mbacke under a statute—18 U.S.C. § 751(a)—that does not apply to him.

Section 751(a) applies to "exclusion or expulsion proceedings under the immigration laws." These are proceedings that Congress abolished in the mid-1990s, when it overhauled the immigration laws and created "removal proceedings." Federal law is unmistakably and unequivocally clear on this point—exclusion or expulsion proceedings are immigration proceedings that began before April 1, 1997. Mbacke could not have escaped from custody for "exclusion or expulsion proceedings" because he was never in such a proceeding. Instead, Mbacke was subject to "removal" proceedings that began in 2013 and ended in 2015.

Section 751(a) makes it a crime to escape following one's arrest *for* immigration proceedings. That is, it is a misdemeanor for someone to escape while an immigration judge is adjudicating his legal status. After an immigration judge issues an order requiring the removal of an alien (and any appeals from that order have been exhausted), the alien's removal proceedings are over. Thereafter, the Government removes the alien from the United States; the alien is no longer in immigration "proceedings." There is a sharp division in immigration law between what happens during immigration "proceedings" and what happens afterwards. When an alien escapes from custody after conclusion of proceedings, he is subject to felony prosecution for interfering with his removal. When Mbacke was detained in 2018, he was not under arrest *for* immigration proceedings; those had long concluded (in 2015).

The Government put on evidence about Mbacke's removal proceedings; as a result, there was no evidence that Mbacke was in exclusion or expulsion proceedings. It

also put on evidence that Mbacke's immigration proceedings concluded in 2015; as a result, there was no evidence that when Mbacke escaped, he was under arrest while awaiting or during immigration proceedings. As a result, the record was devoid of necessary predicates of the charged crime.

The Court, therefore, vacates the jury verdict, grants Mbacke's Rule 29 motion, and enters a judgment of acquittal on the one count in the Information. The Court reaches this decision grudgingly, knowing that it results in overturning a jury verdict in a criminal case, something done only in the most exceptional circumstances. The Court is also cognizant that there is significant evidence of Mbacke fleeing, lying to, and evading law enforcement. However, Mbacke was not charged under the statute that makes such acts criminal. And as a result, the Court—faced with the absence of proof on elements of the charged crime—has no choice but to grant the Rule 29 motion.[1]

Evidence at Trial

The following facts are drawn solely from evidence introduced before Mbacke's initial Rule 29 motion, on which the Court reserved decision.

Mbacke was born on June 26, 1986, (Gov't Ex. 1 at 1), and entered the United States on July, 12, 2015, (Gov't Ex. 3 at 1). He is the married father of three children who are all United States citizens, as is his wife. (Gov't Ex. 7 ¶¶ 11-14; Transcript of Criminal Cause for Jury Trial ("Tr.") at 518:7-10).

[1] This opinion is not intended to, and does not, address whether the double jeopardy that attaches as a result of the judgment of acquittal would bar the Government from trying Mbacke on any of the other crimes discussed herein. *See generally Blockburger v. United States*, 284 U.S. 299 (1932). Nor does it, or can it, affect the order requiring he be removed to Senegal.

On January 13, 2013, a "Notice to Appear" was issued to Mbacke ordering him to appear in Detroit for "removal proceedings." (Gov't Ex. 1 at 1). The Notice stated that he was being ordered to appear for proceedings pursuant to Section 240 of the Immigration and Nationality Act, 8 U.S.C.A. § 1229a ("INA"). (*Id.* at 1). Mbacke was alleged to be a citizen of Senegal, subject to removal, because he no longer had legal status in the United States. (*Id.* at 2).

On August 25, 2015, Mbacke executed a Motion for Stipulated Removal Order and Waiver of Hearing. (Gov't Ex. 7). In that Motion, both ICE and Mbacke jointly requested that the Immigration Judge enter an order of removal without a hearing. (*Id.* ¶ 7). Mbacke agreed to be removed to Senegal, and to waive any right he had to obtain relief from removal, including any appeal from the removal order. (*Id.* ¶¶ 17, 19, 22).

On September 16, 2015, an Immigration Judge issued an order requiring Mbacke be removed to Senegal. (Gov't Ex. 2 at 1). The Judge noted that Mbacke had waived any appeal of that order. (*Id.*). On September 23, 2015, a "Warrant of Removal/Deportation" was issued; it informed ICE that Mbacke was subject to removal/deportation based on "a final order by an immigration judge." (Gov't Ex. 3 at 1). That same day a "Warning to Alien Ordered Removed or Deported" was issued. (Gov't Ex. 6 at 5). It informed Mbacke that he was ineligible to reenter the United States for a period of 10 years. (*Id.*). The Warning comes as a pre-printed form that contains several checkboxes informing the alien of the basis for the bar on reentry. The checkbox selected for Mbacke stated he was barred because he was "deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act[.]" (*Id.*). There was another checkbox that informs an alien he is ineligible to reenter because the alien is deportable under section

241 of the Act and was ordered deported in proceedings commenced before April 1, 1997 under section 242 of the Act. (*Id.*). That checkbox was not selected on Mbacke's Warning notice. (*Id.*).

On June 16, 2016, ICE issued an "Order of Supervision," releasing him. (Gov't Ex. 16). ICE informed Mbacke, by selecting one of two checkboxes, that he was ordered "[r]emoved pursuant to proceedings commenced on or after April 1, 1997," and because his removal had not been effectuated, Mbacke was to be released on certain conditions. (*Id.*). The ICE official left blank the checkbox stating that Mbacke was ordered "[e]xcluded or deported pursuant to proceedings commenced prior to April 1, 1997." (*Id.*).

On January 26, 2018, the Detroit field office of ICE issued a "Notice of Revocation of Release." (Gov't Ex. 5 at 1). The Notice of Revocation informed Mbacke that his release was being revoked for a "Failure to provide [a] Senegal travel document." (*Id.*) (emphasis removed). Mbacke was taken into immigration custody that same day. (Tr. at 356:25-357:5). As of March 2018, Mbacke was at an ICE detention facility in Michigan, awaiting travel documents from Senegal. (Tr. at 227:24-228:11). Later that month, the Consulate of Senegal issued a travel document authorizing a one-way departure to Senegal valid from March 23, 2018 to April 22, 2018. (Gov't Ex. 6 at 2).

On March 27, 2018, Mbacke was being escorted to Senegal by three ICE officers. (Gov't Ex. 6 at 6-7). They left Detroit on a flight to New York's JFK airport around 3:30 pm. (Tr. at 202:24-203:3; 269:19-270:2). They arrived at JFK's Terminal 4 around 5:40 pm, (Tr. at 203:17-21; 270:15-19), and proceeded to the departure gate to wait for the connecting flight to Senegal. (Tr. at 203:25-204:9).

At approximately 7:00 pm, Mbacke was seated with the ICE officers at the gate area from which the flight to Senegal was to depart. (Tr. at 118:3-9, 120:2-3). At around 8:50 pm, Mbacke left the gate area, ran to the retail concourse of Terminal 4 and ultimately through the retail concourse. (Tr. at 120:12-121:2; 129:3-131:9; Gov't Ex. 10). He then ran down the escalator to the first floor, back up to the third floor, and then finally onto the fourth floor, which is the departures floor. (Tr. at 121:3-11; 131:13-132:34; Gov't Ex. 10). Individuals who typically leave Terminal 4 do so from the first, not the fourth floor. (Tr. at 132:35-133:13). After exiting the terminal, Mbacke took a taxi that left the airport. (Tr. at 135:6-136:7). He was not accompanied by any of the ICE officers during this period. (Gov't Ex. 10). Videos showed Mbacke unaccompanied at other times while inside Terminal 4 prior to 8:50 pm, for up to 30 minutes. (Tr. at 181:17-182:5; 191:10-12).

Three days later on March 30, 2018, Mbacke was found by ICE officers in Chicago. (Tr. at 30:1-4, 41:9-21). Mbacke was seated at a Starbucks in Union Station. (*Id.*). He gave the ICE officers who approached him a driver's license that had the name "Antonio" with a picture that did not match Mbacke. (Tr. at 41:24-42:23; 96:1-7; Gov't Ex. 11). He told the officers that he was from Ecuador. (Tr. at 42:19-43:3; 96:14-18). Mbacke ultimately admitted he was the person they were looking for and was arrested. (Tr. at 43:4-17; 96:19-97:1).

<u>Procedural History</u>

Mbacke was charged via criminal complaint on March 29, 2018 with a violation of 18 U.S.C. § 751(a). (Dkt. No. 1). The Complaint alleged that Mbacke "escape[d] from the custody of the Attorney General and his authorized representatives." (*Id.* at 1). He was arrested in Chicago on March 30, 2018. (Tr. at 34:5-43:17). On May 5, 2018, the

Government filed a misdemeanor information charging him with one count of escape from custody, pursuant to 18 U.S.C. § 751(a). (Dkt. No. 9). The Information alleged Mbacke fled from ICE deportation officers who had custody of him "pursuant to exclusion and expulsion proceedings under the immigration laws." (*Id.*).

Trial began on June 18, 2018; the Government's presentation of its case commenced on June 19, 2018 and was completed on June 22, 2018. (Minute Entry dated June 18, 2018; Minute Entry dated June 19, 2018; Tr. at 1; Minute Entry dated June 22, 2018; Tr. at 467). Mbacke made a timely Rule 29 motion following the completion of the Government's case. (Tr. at 500:2-512:20). The Court reserved its decision on the motion. (Tr. at 514:20-22). The jury began its deliberations on June 22, 2018, (Tr. at 615:22-616:5), and returned a verdict of guilty. (Tr. at 620:8-623:10; Dkt. No. 42). Thereafter, on June 29, 2018, Mbacke file a motion for judgment of acquittal that was briefed pursuant to an agreed-upon schedule.

## Discussion

### I. Rule 29 Standards

Federal Rule of Criminal Procedure 29 governs a motion for a judgment of acquittal. Pursuant to Rule 29(b), "[t]he court may reserve decision on the motion," as it did here, and if necessary, must "decide the motion on the basis of the evidence at the time the ruling was reserved." After a jury verdict, a defendant may move for a judgment of acquittal, pursuant to Rule 29(c)(1) within 14 days of a guilty verdict.

"In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999); *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991). "If *any* rational trier of fact could have found the essential elements

of the crime, the conviction must stand. The test is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." *Id.* (internal citation and quotations omitted; emphasis in original). A court may enter a judgment of acquittal only if "the evidence that the defendant committed the crime alleged is nonexistent[.]" *United States v. Heras*, 609 F.3d 101, 105-06 (2d Cir. 2010) (quotations omitted).

## II. Federal Escape Under 18 U.S.C. § 751(a)

18 U.S.C. § 751(a) provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

Section 751(a) criminalizes four kinds of custodial escape—from the custody of the Attorney General (or representative); the custody of any institution or facility, if confined by the Attorney General; custody imposed by virtue of a court or judicial order; or custody of a federal officer or employee pursuant to a lawful arrest. It then imposes either a misdemeanor or felony penalty based on one of five reasons the defendant was in custody. "Custody must either be (1) based on an 'arrest on a charge of felony,' (2) based on a 'conviction of any offense,' (3) 'for extradition,' (4) 'for exclusion or expulsion proceedings under the immigration laws,' or (5) 'by virtue of an arrest or charge of or for a misdemeanor.' If a person escapes while in custody for one of the

first two reasons, the escape is a felony escape with harsher penalties. If a person escapes while in custody for one of the last three reasons, the escape is a misdemeanor escape with lesser penalties." *United States v. Vanover*, 888 F.2d 1117, 1121 (6th Cir. 1989) (quoting § 751(a)).

Mbacke was charged as follows:

> On or about March 27, 2018, within the Eastern District of New York, the defendant MOHAMADOE LAMINE MBACKE did knowingly and intentionally escape from the custody of an officer and employee of the United States, to wit: Deportation Officers of United States Immigration and Customs Enforcement, pursuant to exclusion and expulsion proceedings under the immigration laws.

(Dkt. No. 9, Misdemeanor Information). To be liable for the crime charged, the Government had to prove that Mbacke was under arrest "for exclusion or expulsion proceedings under the immigration laws." 18 U.S.C. § 751(a); *United States v. Harper*, 901 F.2d 471, 473 (5th Cir. 1990) ("'[T]he underlying basis of the accused's federal custody or confinement is an essential element of the offense proscribed by § 751(a)[.]'") (quoting *United States v. Edrington*, 726 F.2d 1029, 1031 (5th Cir. 1984)).

The Court's decision is based on the Government's failure to prove that Mbacke was in custody "for exclusion or expulsion proceedings under the immigration laws."

A. <u>"Exclusion or Expulsion Proceedings Under the Immigration Laws"</u>

"Exclusion Proceedings" and "Expulsion Proceedings" refer to a former distinction in federal immigration law. Prior to 1996, federal immigration hearings were divided between proceedings for those aliens who had entered the United States (expulsion or deportation) and those who were attempting to enter but had not yet done so (exclusion). *Judulang v. Holder*, 565 U.S. 42, 45 (2011) ("Before 1996, these two kinds of action occurred in different procedural settings, with an alien seeking entry

(whether for the first time or upon return from a trip abroad) placed in an 'exclusion proceeding' and an alien already here channeled to a 'deportation proceeding.'"). The purpose of the distinction was recognition that aliens in the United States had different constitutional rights from aliens who had not entered. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

An "expulsion proceeding" was a proceeding to expel an alien from the United States, and commonly referred to as deportation. *Vartelas v. Holder*, 566 U.S. 257, 261 (2012) ("Exclusion hearings were held for certain aliens seeking entry to the United States, and deportation hearings were held for certain aliens who had already entered this country."). Expulsion proceedings were governed by procedures established by statute and INS regulations. Those procedures were in Section 242 of the Immigration and Nationality Act (then 8 U.S.C. § 1252 (Jan. 1, 1995)) and regulations in 8 C.F.R. Part 242. In 1996, "Congress abolished the distinction . . . and created a uniform proceeding known as 'removal,'" *Vartelas*, 566 U.S. at 262, when it passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), 110 Stat. 3009-546.

IIRIRA's creation of removal proceedings was not just a simple consolidation of exclusion and expulsion/deportation proceedings with use of the pre-existing rules. Removal changed the focus on "entry" that created the difference between exclusion and expulsion, to one on "admission." *See In Re Collado-Munoz*, 21 I. & N. Dec. 1061, 1063-

64 (BIA 1998).[2] An alien outside the United States is not seeking entry, but seeking admission; certain classes of aliens were deemed under IIRIRA to be inadmissible.[3]

Removal proceedings are governed by rules different than those which governed exclusion and expulsion proceedings. *INS v. St. Cyr*, 533 U.S. 289, 318 (2001) (noting IIRIRA resulted in new procedural rules); *Jama v. ICE*, 543 U.S. 335, 349 (2005) ("*Removal is a new procedure* created in 1996 through the fusion of two previously distinct expulsion proceedings, 'deportation' and 'exclusion.'") (emphasis added). For instance, expulsion proceedings were initiated by an order to show cause; removal proceedings begin with a "Notice to Appear," and are governed by a new statute (8 U.S.C. § 1229a). *Tablie v. Gonzales*, 471 F.3d 60, 62 (2d Cir. 2006); *compare Al Najjar v. Ashcroft*, 273 F.3d 1330, 1333 (11th Cir. 2001) (per curiam) ("[T]he INS issued an order to show cause under 8 U.S.C. § 1251(a)(9) (1984), alleging that Al Najjar had failed

---

[2] Admission is "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

[3] The distinction is not semantic. Individuals who previously did not have to seek permission to re-enter to the United States—like lawful permanent residents who committed certain crimes and left the country on a temporary basis—had to obtain authorization for admission. If they failed to do so, they would be subject to the new removal proceeding. Under the prior pre-IIRIRA regime such residents were not subject to either exclusion or expulsion for temporary departures. *Vartelas*, 566 U.S. at 263.

to maintain the conditions of his nonimmigrant status[.]") *with* 8 U.S.C. § 1229(a)(1) (requiring Notice to Appear).[4]

IIRIRA also narrowed the ability of individuals who were in removal proceedings to obtain relief from removal. An alien in an expulsion proceeding could obtain "suspension" from deportation; an alien in a removal proceeding is not eligible for such relief. *Arenas-Yepes v. Gonzales,* 421 F.3d 111, 115-16 (2d Cir. 2005); *Baltazar-Alcazar v. INS*, 386 F.3d 940, 944 n.1 (9th Cir. 2004). Finally, judicial review of removal proceedings is also significantly curtailed compared to review that could occur for expulsion proceedings. *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 89 (2d Cir. 2001) ("IIRIRA, in pertinent part, repealed § 106 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1105a, which had provided for judicial review of deportation and exclusion orders.").

Congress, however, could not—and did not—eliminate reference to exclusion and expulsion proceedings entirely. That is because at the time of IIRIRA's enactment in 1996, aliens were in the midst of such proceedings. IIRIRA contained a transitional provision (§ 309(c)(1)) to govern cases that were pending as of the statute's enactment. "[U]nder transitional provisions in IIRIRA, which are not codified in the United States

[4] These particular changes were largely, but not entirely, ministerial. 5 Charles Gordon, Stanley Mailman, Stephen Yale-Loehr, and Ronald Y. Wada, *Immigration Law and Procedure*, § 64.02 (Rev. Ed. 2018) ("[T]he [IIRIRA] does not impose additional notice requirements for a hearing. It reorganizes the two documents—'order to show cause' and 'notice of time and place of proceedings'—into one 'notice to appear.'"). For instance, the Government has more relaxed service requirements (which, in turn, makes it easier for an immigration judge to impose a penalty for an alien's failure to appear). *Id*. "The consequences of a noncitizen's failure to appear at a removal proceeding can be quite severe. . . . [H]e shall be ordered removed in absentia, if the Government [makes the requisite evidentiary showing]." *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018) (internal quotations omitted).

Code, . . . the final provisions pertaining to removal procedures shall not apply to an alien . . . who was in exclusion or deportation proceedings at the time the amendments took effect." *Zhao*, 265 F.3d at 89; *St. Cyr*, 533 U.S. at 317-18 ("[T]he 'saving provision' in IIRIRA § 309(c)(1), 110 Stat. 3009-625 . . . states that, for aliens whose exclusion or deportation proceedings began prior to the . . . effective date, 'the amendments . . . shall not apply[.]'") (quoting § 309(c)(1)); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 475 (1999).

To this day, there are cases involving aliens who have yet to be deported, but were in expulsion proceedings before 1997. *E.g.*, *In re: Eliasar Lopez-Ayala*, No. A070 885 119, 2018 WL 1897685, at *1 (B.I.A. Feb. 26, 2018) (reviewing challenge to 1995 deportation order 22 years later, under pre-IIRIRA expulsion regulations). An alien who remains in the United States, but was ordered deported prior to 1997, is still governed by the pre-1997 rules. As such, the transition statute governing expulsion proceedings remain part of federal law and have never been repealed, nor have the C.F.R. regulations that govern such proceedings. *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 402 (S.D.N.Y. 2004) ("The existing regulations governing deportations of 'Excluded Aliens' and 'Aliens in the United States' were carried forward, but only 'For Hearings Commenced Prior to April 1, 1997.'") (quoting 8 C.F.R. §§ 241.20 & 241.30); 5 *Immigration Law and Procedure* § 64.02 ("[D]eportation and exclusion cases pending on April 1, 1997, continue under the old statute and regulations.").

There were new definitions added to the C.F.R., however, to deal with the dual presence of expulsion and exclusion and removal proceedings in the federal immigration rules. They mimicked the savings provision of IIRIRA § 309(c)(1), where expulsion/deportation proceedings are defined as pre-1997 proceedings. The rules

governing "expulsion" proceedings are located exclusively in Subpart C of 8 C.F.R. Part 241. *See* 8 C.F.R. § 241.33. Subpart C of 8 C.F.R. Part 241 is titled "Deportation of Aliens" and is for "proceedings commenced prior to April 1, 1997." *See id.* § 241.30. Every single C.F.R. since IIRIRA's passage has included this definition of expulsion proceedings; it remains a current regulation. *Compare* 8 C.F.R. § 241.30 (1997) *with* 8 C.F.R. § 241.30 (2018); *see also* 8 C.F.R. § 1241.30 ("Aliens ordered deported") ("For the regulations of the Department of Homeland Security pertaining to the detention and deportation of aliens ordered deported, see 8 CFR 241.30 through 241.33.").[5]

The federal escape statute was not amended to replace exclusion and expulsion with removal. Again, at the time of IIRIRA's passage, aliens were still in such hearings, and it made sense to keep the penalty for someone who escaped from such a proceeding.

The Government conceded at the charge conference that it was not arguing that Mbacke was in custody for an exclusion proceeding, and was prosecuting only under the theory that his removal proceeding was an expulsion proceeding. (Tr. at 546:3-547:3). The Government's papers do not make any factual arguments. That is, the Government does not argue the documents state that Mbacke was subject to pre-1997 proceedings. Rather, the Government makes a series of legal arguments about why the term "expulsion proceedings" in § 751(a) means "removal proceedings." If that is right, then the record evidence would be sufficient for a jury to conclude Mbacke was subject to

---

[5] Other regulations reinforce the distinction between deportation/expulsion and removal as one between proceedings prior to April 1, 1997 and those after that date. The Executive Office of Immigration Review's regulations contain rules that govern the removal of an alien (8 C.F.R. Part 1241, Subpart A) that are distinct from those for aliens subject to "Deportation," who are in "Hearings Commenced Prior to April 1, 1997." 8 C.F.R. Part 1241, Subpart C.

expulsion proceedings. But the Government's arguments about the meaning of "expulsion proceedings" are without merit.

The Government first rebuts a void-for-vagueness challenge, and cites to authority to defend the proposition that § 751(a)'s use of expulsion is not vague. (Gov't Br. at 6-8). The Court agrees—the statute is not vague. The statute tethers the meaning of expulsion proceedings to that *under the immigration laws*. And the immigration laws define expulsion proceedings—and has for the last 20 years—as those which began on or before April 1, 1997. *See* 8 C.F.R. §§ 241.30, 241.33; IIRIRA § 309(c)(1).

The Government then argues that in 1988 when Congress added "exclusion or expulsion proceedings" to § 751(a) they were using deportation and exclusion synonymously. (Gov't Br. at 6-7; Gov't Reply at 4-5). The Government points out that in the statute's legislative history, there is a sentence that uses "exclusion or deportation" instead of "exclusion or expulsion." (Gov't Br. at 6-7). That does not establish that removal proceedings are the same as expulsion proceedings.
As noted above, *see supra* at 9-10, there is no dispute that deportation and expulsion were often used synonymously. But there are important and significant differences between deportation/expulsion and removal, including differences in hearing procedures and judicial review. Many of the differences between the pre-and post-IIRIRA laws lie at the heart of the distinction between removal and expulsion or deportation. In addition, removal proceedings were first created eight years after expulsion and exclusion proceedings were added to the scope of § 751(a); they could not, therefore, have been coextensive.

IIRIRA amended the INA in two places where the term "expulsion" already existed, by adding the word removal. *First*, it amended 8 U.S.C. § 1107(a)(17)—the

definition of the term "immigration laws"—which had previously read: "[t]he term 'immigration laws' includes this chapter and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, or expulsion,"—by striking the terms "or expulsion" and replacing it with "expulsion or removal." *See* 8 U.S.C. § 1101(a)(17) (1995); Omnibus Consolidated Appropriations Act, PL 104-208, September 30, 1996, 110 Stat 3009. It also amended 8 U.S.C. § 1357 ("Powers of Immigration Officers and Employees") to again add the word removal after expulsion. *Id.* Expulsion and deportation were already covered by these sections of the INA; the 1996 amendments to both of these statutes added the word "removal." The need to make these changes indicates the law meant to "differentiate, not to equate or amalgamate" expulsion and removal. *United States v. Granderson*, 511 U.S. 39, 46 (1994); *Sarmiento Cisneros v. United States*, 381 F.3d 1277, 1281-82 (11th Cir. 2004) ("We also reject the argument of [ICE] that . . . section 1231(a)(5), when it refers to an 'order of removal,' applies also to orders of exclusion and orders of deportation, both of which must have been issued before April 1, 1997. . . . [T]he language 'order of removal' is equally consistent with the opposite conclusion that Congress intended to apply this section prospectively to the orders of removal entered after the effective date of the Act.") (internal citation omitted); *Khouzam v. Attorney General of U.S.*, 549 F.3d 235, 248 (3d Cir. 2008) ("[I]t appears that Congress did not intend . . . deportation to be

wholly synonymous with . . . removal. . . . [T]he definition for finality of deportation orders does not control our analysis of the finality of an order of removal.").[6]

The Government's argument about the equivalence of expulsion and removal ignores the regulations and the statute (IIRIRA § 309) that define expulsion proceedings as those begun prior to April 1, 1997. Moreover, the statute Congress passed in IIRIRA to govern "removal proceedings," 8 U.S.C. § 1229a, contains no reference to expulsion or deportation. Referring to the regulations and IIRIRA for the meaning of expulsion is required by § 751(a). Nor do the Government's briefs address the various documents that it introduced that have ICE choosing to demarcate Mbacke's proceedings as removal proceedings, and affirmatively opting not to call them expulsion proceedings. (*See, e.g.*, Gov't Exs. 1, 2, & 7). While not necessarily dispositive of the question, these documents at a minimum suggest that ICE was operating with an understanding that expulsion proceedings are pre-April 1, 1997 proceedings and that expulsion and removal are distinct.

The Government had to demonstrate that Mbacke was subject to a proceeding that began prior to April 1, 1997.[7] There was no such evidence. Mbacke entered the United States only in 2005. (*See* Gov't Ex. 1 at 2 ("You were admitted to the United

[6] The renaming of various sections of the INA does not establish that deportation proceedings and removal proceedings are coextensive. Prior to 1996, Section 242A was titled "Deportation." Pursuant to IIRIRA, Section 237 ("General Class of Deportable Aliens") (codified as 8 U.S.C. § 1227) kept its nomenclature referring to deportation. But the aliens covered by § 237 are placed in some version of removal proceedings, not pre-IIRIRA expulsion/deportation proceedings. *See* 8 U.S.C. § 1229a(a)(1)-(2) (aliens listed as deportable in Section 237 are subject to removal proceedings).

[7] The Information charges that Mbacke was in "exclusion and expulsion proceedings." The Court does not address whether the Government was obligated to prove that Mbacke was in *both* an exclusion and an expulsion proceeding. Section 751(a) refers to exclusion *or* expulsion proceedings.

States at Newark, New Jersey on or about July 12, 2005 as an A2 nonimmigrant for duration of status.”)). He was not eligible to be placed in an expulsion proceeding in 2013, when the INA only provided for removal proceedings. The documents introduced at trial make clear that Mbacke was in a removal proceeding, while simultaneously stating that he was not in an expulsion or pre-1997 proceeding. For instance, the Notice to Appear (which is unique to removal hearings) ordered Mbacke to appear for proceedings under Section 240 of the INA. (*Id.* at 1). Section 240 of the INA is for “Removal Proceedings;” former section 242 of the INA dealt with expulsion proceedings. 8 U.S.C. § 1252(b) (Jan. 1, 1995) (“Proceedings to determine deportability; removal expenses”).

The Warrant of Removal/Deportation stated the basis for Mbacke’s removal; ICE checked the box stating that Mbacke was in a removal proceeding, and declined to check the box stating that he was subject to proceedings commenced before April 1, 1997 and under section 242 of the INA. (Gov’t Ex. 6 at 5). ICE’s June 2016 Order of Supervision does the same thing—it states that Mbacke is being “[r]emoved,” and leaves as unchecked the box permitting ICE to state he was “[e]xcluded or deported pursuant to proceedings prior to April 1, 1997.” (Gov’t Ex. 16 at 1).

As a result, given that the *only* evidence presented demonstrated that Mbacke was subject to a removal proceeding, and no evidence offered suggesting that he was subject to an expulsion proceeding, there was no evidence on one of the elements of the crime charged.[8]

---

[8] The meaning of the term “expulsion proceedings” was contested at the jury charge conference. The Court, over Mbacke’s objection, instructed the jury as follows: “The statute as I have read to you contains the term ‘exclusion or expulsion proceedings.’ Exclusion proceedings are not an issue in the case. In 1996, Congress

B. For Proceedings

Even assuming that "exclusion or expulsion proceedings" should be read as "removal proceedings," there is another reason the Rule 29 motion must be granted. Section 751(a) makes it a misdemeanor for someone to escape while under "lawful arrest *for* exclusion or expulsion proceedings." In other words, if a person escapes while awaiting or during his immigration hearings, he is criminally liable under § 751(a). This clause of § 751(a) does not cover an escape *after* immigration proceedings have completed. After an alien escapes after his status has been adjudicated—and he is ordered removed or deported and there are no more appeals—he is no longer in proceedings. He is in what the immigration laws define as the "removal period." An escape during the "removal period" may make the alien liable for a felony (under another statute), but he cannot be liable under § 751(a). *Cf. McDonnell v. United States*, 136 S.Ct. 2355, 2368 (2016) ("The . . . word[] . . . 'proceeding,' . . . —connote[s] a formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination.").

Removal proceedings are governed by Section 304 of IIRIRA, 8 U.S.C. § 1229a. A "proceeding" is "the . . . procedure for *determining* whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3) (emphasis added). It occurs before an immigration judge. *Id.* §

---

created something called 'removal proceedings,' which include what was previously referred to as 'deportation proceedings.' Deportation proceedings were a type of proceeding that was concerned with the expulsion of aliens who have already entered the United States." (Tr. at 605:9-16). That was error, for the reasons stated in this opinion. Should the Court of Appeals determine that the judgment of acquittal be reversed, and deem this original instruction correct, Mbacke would not be entitled to a new trial. *See* Fed. R. Crim. P. 29(d)(1). The Court has reviewed the other bases on which Mbacke seeks a new trial and finds them without merit.

1229a(a)(1). And "*[a]t the conclusion of the proceeding* the immigration judge shall decide whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A) (emphasis added). Following the immigration judge's order, the proceedings can be *reopened* only in limited circumstances, and only within 90 days. *Id.* § 1229a(c)(7)(C). If not reopened, the order becomes final upon the completion of any appeals process and in other defined circumstances. 8 C.F.R. § 1241.1 ("Final order of removal") ("An order of removal made by the immigration judge *at the conclusion of proceedings* . . .") (emphasis added).

The removal of the alien—the act of taking him out of the United States—is a separate event; not a part of his "proceedings." That process is governed by a different statute, 8 U.S.C. § 1231 ("Detention and removal of aliens ordered removed"). Pursuant to § 1231, a 90-day "removal period" is set in which the alien must be taken out of the United States. *Id.* § 1231(a)(1)(A); *Zadvydas*, 533 U.S. at 682 ("When . . . a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period[.]'"). Nothing in § 1231 suggests that this removal period is part of the removal "proceeding." *See also Zadvydas*, 533 U.S. at 683 ("The post-removal-period detention statute is one of a related set of statutes and regulations that govern *detention* during and *after removal proceedings*.") (emphasis added).

If "proceedings" may only occur before an immigration judge (8 U.S.C. § 1229a(a)(1)), result in an order of removal "at the conclusion" of proceedings, and if detention takes place "*after removal proceedings*," *Zadvydas*, 533 U.S. at 683 (emphasis added), when Mbacke fled in 2018, he was not under arrest *for* removal proceedings. His proceedings finished in September 2015. (Gov't Ex. 2). Mbacke was

released, later taken into ICE custody on January 26, 2018 and in the process of being removed to Senegal when he fled from ICE officers. (Tr. at 366:1-367:2).[9] His release documents state that Mbacke was in the 90-day "removal period." (*See, e.g.*, Gov't Ex. 16 at 5).

The Government argues the word "proceedings" should not be read to have a "time limitation," and an escape years after an immigration judge's final order is still during proceedings. (Gov't Br. at 11 ("[E]scape from custody for 'expulsion proceedings' would include not only an escape by an alien while in custody prior to an immigration judge's order but also any escape by an alien while in custody up until the defendant's removal or expulsion.")). This argument is incorrect.

The portion of § 751(a) that criminalizes escape from arrest for "exclusion or expulsion proceedings" does so *under the immigration laws*. As noted earlier, proceedings are defined in the statute titled "Removal Proceedings" as the procedure "*for determining* . . . whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3) (emphasis added). When that determination has been made (and appeals concluded), the proceeding is complete. If there is any doubt about that, § 1229a dispels it. The statute provides that the immigration judge's order is issued at the conclusion of the proceeding, and the proceeding may be reopened only within 90 days.

The overall structure of the statute confirms that § 751(a)'s reference to escape while under arrest for "for expulsion or exclusion proceedings," is an escape prior to or during the alien's hearing. Section 751(a) has a differentiated penalty scheme, one that

[9] The Government even solicited testimony demonstrating the termination of Mbacke's proceedings. (*See* Tr. at 361:1-3 (Q: "What was the ultimate disposition of the defendant's removal proceedings?" A: "To be deported to Senegal.") (discussing Gov't Ex. 2, the final order of removal dated September 16, 2015)).

punishes as a misdemeanor an escape following an arrest for a misdemeanor crime, *before conviction*, but with a *felony* when the person has escaped *after conviction* (regardless of whether the conviction is for a misdemeanor or felony). *See Vanover*, 888 F.2d at 1122 n.9 ("Where escape occurs after conviction, however, the nature of the underlying conviction is unimportant since, as is evident from the language of the statute, it is irrelevant whether the underlying conviction is for a misdemeanor or felony."); *Harper*, 901 F.2d at 473.[10]

Applying that rubric to the immigration provisions of § 751(a), the misdemeanor penalty applies to someone who escapes after being arrested for their immigration hearings, but before his legal status is adjudicated. No provision of § 751(a) is written to punish a post-adjudication escape only as a misdemeanor.[11] The overall statutory scheme makes no sense if one tries to cram both an escape before and after immigration adjudication into the misdemeanor provision; § 751(a) is structured to punish a post-adjudication escape as a more significant offense.

There is another statute—one specific to removal proceedings—that covers an escape after immigration proceedings. In IIRIRA, Congress included 8 U.S.C. § 1253 ("Penalties related to removal") which made it a felony (with a maximum term of imprisonment of 10 years) for anyone to interfere with removal, including by: refusing

[10] It is also a felony to escape while under arrest for a felony, even before conviction. *United States v. Patterson*, 230 F.3d 1168, 1172 n.2 (9th Cir. 2000) ("Felony escape is committed when, as in this case, the custody escaped from is by virtue of *any conviction,* or when it is by virtue of a *felony arrest*. Misdemeanor escape may be from custody by virtue of a *misdemeanor arrest* or on immigration matters.") (internal citations omitted; emphasis in original).

[11] Escape from arrest for extradition is similarly punished as a misdemeanor. Extradition is the process of surrendering an individual to a foreign jurisdiction, typically for the person to stand trial.

to depart within 90 days of the final removal order, § 1253(a)(1)(A); failing to apply for travel documents, § 1253(a)(1)(B); failing to present oneself for removal at the time and place ordered, § 1253(a)(1)(D); or, hampering or preventing removal, § 1253(a)(1)(C).

The statute—previously codified at 8 U.S.C. § 1252(e) and applied to expulsion proceedings—has been used to convict aliens who tried to flee at an airport, refused to board a flight, or fought with ICE officers, while being removed from the United States. *See, e.g.*, *United States v. Kaluza*, 484 F. App'x 630, 632 (2d Cir. 2012) (affirming conviction of Polish national under § 1253 for failure to obtain Polish passport); *United States v. Mtola*, 598 F. App'x 416, 418-19 (6th Cir. 2015) (affirming conviction under § 1253 for "failure to depart" where alien refused to walk and take transport vehicle to airport for flight, and then attempted to flee from van); *United States v. Ngay*, 708 F. App'x 192, 193 (5th Cir. 2018) (affirming § 1253 conviction where alien declared before "flight to Angola that he would not go."); *United States v. Contant*, No. 10-CR-355, 2011 WL 744530, at *2 (M.D. Pa. Feb. 23, 2011) ("He then walked off the airplane, indicating to the Court that his refusal to walk to the plane was an effort designed to hamper his removal."), *aff'd*, 467 F. App'x 141 (3d Cir. 2012).

The Government argues that *United States v. Acea-Aquev*, No. 98-CR-1219, 1999 WL 92499 (S.D.N.Y. Feb. 19, 1999) supports its position that "proceedings" under § 751(a) is not limited to the alien's immigration hearings. The case does not stand for that proposition. There, the defendant, charged with a misdemeanor violation of § 751(a), argued that her expulsion proceedings had been completed and sought dismissal of the case. *Id.* at *2. The District Court denied the motion. *First*, the defendant was potentially liable under other provisions of § 751(a) and so her argument about proceedings would not lead to dismissal of the charge. *Id.* at *2. *Second*, the District

Court determined that the term "expulsion or exclusion proceedings" is not an element of § 751(a), but something to be decided by a judge following a jury verdict. *Id.* So, at the pre-trial stage of the case, the defendant's argument about the state of her proceedings could not lead to dismissal of the charge. *Id.* As such, it was unnecessary to determine whether in fact the defendant's immigration proceedings had concluded.

*Acea-Aquev* rests on the assumption that proving the defendant is in expulsion or exclusion proceedings is not an element of § 751(a). Taken to its logical conclusion, the Government would not ever have to prove the basis of custody. I respectfully disagree with that analysis. When a defendant is charged with misdemeanor escape, one of the elements the Government must prove is the basis for custody. In charging a violation of § 751(a)—and ultimately to find a defendant guilty—it is not sufficient for the Government to rely on the first part of the statute and prove that a defendant has escaped, for example, following a lawful arrest. It must also prove that custody was created either because the defendant was arrested for committing a misdemeanor, a felony, or as in Mbacke's case, *for* expulsion or exclusion proceedings. *United States v. Rosa-Ortiz*, 348 F.3d 33, 37 (1st Cir. 2003) ("The preamble, however, has consistently been held not to define all of the elements of the offense, and we agree. Rather, because of the narrower sentencing terms of the statute, the government must prove one of the enumerated bases for the escapee's federal custody."); *Vanover*, 888 F.2d at 1121; *Harper*, 901 F.2d at 473; *United States v. Evans*, 159 F.3d 908, 910 (4th Cir. 1998).

*Acea-Aquev* is in tension with these Court of Appeals decisions addressing the elements of § 751(a).[12]

In Mbacke's case, having charged that he was under lawful arrest for exclusion or expulsion proceedings, the Government was required to prove that at trial. And it did not.[13] The evidence is undisputed by the Government that Mbacke was not under arrest in 2018 awaiting a hearing or disposition on the charge that he was present in the United States illegally. That determination, on consent, had been resolved years earlier in 2015. His detention after that determination was not *for* proceedings; he was in the "removal period" stage. As such, he could not be liable for escaping from custody for such a proceeding, which is what the charged clause of § 751(a) requires. And, as a result, the conviction cannot stand.

---

[12] The prosecution in *Acea-Aquev* was ultimately dropped by the Government. (*United States v. Acea-Aquev*, No. 98-CR-1219, Dkt. No. 13, *Nolle Prosequi* dated Mar. 24, 1999).

[13] The Government's position would complicate other areas of immigration law. There is a substantial body of case law dedicated to the question of when an alien may *reopen* his proceedings. *E.g.*, *Kukana v. Holder*, 558 U.S. 233, 242 (2010) ("The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings.") (quoting *Dada v. Mukasey*, 554 U.S. 1, 4 (2008) ("The Act provides that every alien ordered removed from the United States has a right to file one motion to reopen his or her removal proceedings.") (citing 8 U.S.C. § 1229a(c)(7))).

The concept of voluntary departure; its associated statutes and time limits would also not make sense unless there was a pre-departure closing of proceedings. "Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable —to leave the country willingly." *Dada*, 554 U.S. at 8. If the alien agrees to removal "before or during removal proceedings," *id.* at 10 (citing § 1229c(a)(2)(A)), he may depart the country within 120 days. And the Attorney General may grant an alien the ability to voluntarily depart if "at the conclusion of a proceeding under section 1229a [*i.e.* a removal proceeding]," certain conditions have been met; that voluntary departure must occur with 60 days. 8 U.S.C. § 1229c(a)(1), 1229c(b)(1)-(b)(2); *Dada*, 554 U.S. at 9-10 (evaluating voluntary removal scheme in context of motions to reopen).

*                    *                    *

The Court does not reach this decision lightly, mindful of the high standard that Mbacke must satisfy to reverse the jury's verdict.

In *Rosa-Ortiz*, the 1st Circuit vacated the defendant's guilty plea to conspiracy to violate § 751(a), where the defendant hatched a plan to break out a material witness from the federal prison in Puerto Rico; the Court concluded that § 751(a) did not cover the escape of a material witness. In so doing, the First Circuit reached a holding that has particular application to the present case:

> We are certain that Congress did not intend that attempted escapes by material witnesses in federal custody should bear no consequences. The government stated at oral argument that the defendants' conduct may at least constitute obstruction of justice. *See* 18 U.S.C. § 1503(a). But that was not the crime charged here. For whatever reason, the government chose instead to charge a conspiracy to violate § 751(a). The plain text of that statute does not support the indictment in this case, and "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."

*Rosa-Ortiz*, 348 F.3d at 42 (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)).

The immigration laws are quite complex. The INA has been repeatedly amended; much of the law has developed with the use of colloquial parlance overlaid with extensive regulation; entire statutes have moved or been abolished. This case merely highlights some of those nuances. These complexities have come to bear on this case, and demonstrate that the Government charged Mbacke with the wrong crime, one inapplicable to the stage to which his immigration status had proceeded. That is not to say that he is guilty of some other crime. Rather, because the Government is held to the strict burden of proving each element of the *charged* offense beyond a reasonable doubt, when there is no evidence on one of those elements, the Court has no choice but to enter

a judgment of acquittal for the defendant. The Government has the discretion to choose which crime to charge a defendant. But when it errs in that choice, there is no leeway the Court can extend it.[14] *Id.*; *e.g.*, *United States v. Richardson*, 687 F.2d 952, 967 (7th Cir. 1982) ("[T]here is no evidence to permit a reasonable jury to find beyond a reasonable doubt that defendant's custody or confinement was 'for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction. . . .' In the absence of such evidence, defendant's conviction under . . . § 751(a) cannot stand.") (quoting 18 U.S.C. § 751(a)).[15]

The Court enters a judgment of acquittal on the one count in the Information, charging Mbacke with a violation of 18 U.S.C. § 751(a).

SO ORDERED.

*<u>/s/ Sanket J. Bulsara</u>* <u>July 20, 2018</u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[14] Perhaps tellingly, ICE's notice to Mbacke on January 26, 2018 detailing the consequences for his failure to depart the United States quotes and cites to 8 U.S.C. § 1253—the Removal Penalties criminal statute—and makes no mention of 18 U.S.C. § 751(a). (Gov't Ex. 5).

[15] Mbacke raises a number of other arguments for why he is entitled to a judgment of acquittal; many of those issues raise disputed issues of fact and other complex issues under the immigration laws. In light of the legal bases for granting the motion discussed in this opinion, the Court does not reach these other arguments, other than to conclude they do not entitle him to a new trial. *Supra* n.7.